IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA ANN BUSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 5335 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Barbara Ann Bush's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, Plaintiff's request to reverse the Commissioner's decision is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 23] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On May 7, 2013, Plaintiff filed her application for DIB, alleging disability since October 31, 2011 due to a crushed lumbar disc and a left shoulder injury. (R. 102–03, 140.) Her application was denied initially and again upon reconsideration. (R. 132–34, 140–44.) Plaintiff timely requested a hearing, which took place before

an Administrative Law Judge ("ALJ") on December 14, 2015. She was represented by a non-attorney representative and personally testified. (R. 40–62, 145, 148–49.) A medical expert and a vocational expert were also present and offered testimony. (R. 62–98.) On May 25, 2016, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (R. 16–36.) The Appeals Council denied review on May 30, 2017. (R. 1–5.)

## II. ALJ DECISION

In determining that Plaintiff was not disabled, the ALJ analyzed Plaintiff's claim according to the five-step sequential evaluation process established under the Act. (R. 20–21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 31, 2011, her alleged disability onset date.[1] (R. 21.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spondylosis[2] and obesity. (*Id.*) The ALJ also found that Plaintiff suffered from the following non-severe impairments: moderate degenerative disc disease of the cervical spine with disc bulge, left leg weakness, bilateral hand pain and stiffness, hyperlipidemia, and depression. (R. 22.) At step

---

[1] At least with respect to Plaintiff's post-application work activity, it appears that the ALJ gave Plaintiff the benefit of the doubt and assumed a lack of SGA. Although Plaintiff had engaged in some work activity since her application date, the ALJ reasoned that "it [was] not necessary to determine whether that work activity constitutes disqualifying substantial gainful activity" because there was another valid basis for denying Plaintiff's application. (R. 21.)

[2] Lumbar spondylosis is a "degenerative joint disease affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness, sometimes with sciatic radiation due to nerve root pressure by associated protruding disks or osteophytes." *Dorland's Medical Dictionary* (hereafter *Dorland's*), http://www.dorlands.com (last visited Sept. 28, 2018).

three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23.)

The ALJ then determined Plaintiff's residual functional capacity ("RFC") for two distinct time periods: (1) from the alleged onset date through May 6, 2013 (the "Pre-Application Period"); and (2) from May 7, 2013 through the date of the decision (the "Post-Application Period"). (R. 23, 28.) During the Pre-Application Period, Plaintiff could perform work at a light exertional level, subject to several limitations; during the Post-Application Period, Plaintiff could perform work at a sedentary exertional level, subject to the same limitations.[3] (*Id.*) Moving to step four, the ALJ concluded that Plaintiff could perform her past relevant work as a claims examiner, which is a skilled, sedentary job, and thus is not disabled under the Act.[4] (R. 29-30.)

---

[3] The ALJ limited Plaintiff as follows:

> [Plaintiff] could occasionally operate foot controls bilaterally. [Plaintiff] could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl. [Plaintiff] could have no exposure to unprotected heights, moving mechanical parts, or vibration. Any time off task would have been accommodated by normal breaks.

(R. 28 (Pre-Application Period RFC); *see also* R. 23 (Post-Application Period RFC).)

[4] The ALJ also made an alternate finding that there were significant jobs at the light level available to Plaintiff during the Pre-Application Period prior to May 7, 2013. (R. 29–30.)

# DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation (i.e., past work)? and (5) Is the plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II. JUDICIAL REVIEW

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" so long as "the decision is adequately supported") (internal citation and quotations omitted).

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain the "analysis of the evidence with enough detail and clarity to permit meaningful

appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning.") (internal citations omitted).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even so, an ALJ must consider all relevant evidence, and it cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ erred because she: (1) failed to support her finding that Plaintiff did not meet Listing 1.04 with substantial evidence: (2) provided inadequate reasons for rejecting several functional restrictions offered by James Elmes, M.D., a consulting physician who examined Plaintiff; (3) did not incorporate Plaintiff's mild mental limitations into her RFC assessment; and (4) failed to properly analyze Plaintiff's subjective allegations of pain. The Court agrees that the ALJ failed to properly support her finding that Plaintiff did not meet Listing 1.04, warranting remand for further administrative proceedings.

6

"If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, [she] is presumptively eligible for benefits." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). At issue here is Listing 1.04, which describes certain spinal disorders and is divided into three subsections. *See* 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.04(A)–(C). On appeal, Plaintiff only challenges the ALJ's determination regarding Listing 1.04(C). (*See* Pl.'s Mem. at 14–15) (identifying only 1.04(C) specifically); (Pl.'s Reply at 8) (asserting that Listing 1.04 requires criteria that are only listed in subsection C).

Listing 1.04(C) requires, among other things, evidence of (1) lumbar spinal stenosis;[5] and (2) an inability to ambulate effectively, as that phrase is defined in Listing 1.00(B)(2)(b). 20 C.F.R. Part. 404, Subpart P., Appendix 1, § 1.04(C). Although the ALJ acknowledged Plaintiff's severe lumbar spondylosis, she determined that Listing 1.04(C) was not satisfied because these two requirements were not met; specifically, the ALJ found that the medical evidence did not include evidence of lumbar spinal stenosis and that Plaintiff's back disorder had not resulted in an inability to ambulate effectively.[6] (R. 23.) Neither finding is legally sufficient.

---

[5] Lumbar spinal stenosis is defined as the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space." *Dorland's* (last visited Sept. 26, 2018).

[6] Although the ALJ did not specifically identify the subdivisions of Listing 1.04, only subdivision (C) requires evidence of lumbar spinal stenosis and an inability to ambulate effectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04(A)–(C). The ALJ also found that there was no evidence of nerve root compression and spinal arachnoiditis. (R. 23.) These findings address subdivisions (A) and (B), respectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04(A)–(B).

First, the ALJ ignored medical evidence of lumbar spinal stenosis in the record. The ALJ overlooked a December 2014 MRI (taken after Plaintiff underwent lower back surgery in September 2014) indicating the continued post-surgery presence of "moderate right neuroforaminal stenosis" at the L5-S1 level, *i.e.*, spinal stenosis at the base of Plaintiff's lumbar spine.[7] (R. 25, 1009–10, 1166–67.) And despite briefly discussing the February 2016 opinion of Dr. Elmes, who examined Plaintiff at the ALJ's request, the ALJ neglected to note Dr. Elmes's opinion clinical impression that Plaintiff suffered from lumbar foraminal stenosis. (R. 26–28, 1316, 1319); *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). In light of this medical evidence, the ALJ's determination that the record lacked *any* medical evidence of lumbar spinal stenosis was erroneous. *See Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (indicating that a decision based on an incorrect interpretation of the medical evidence is not supported by substantial evidence).

Second, even if, as the ALJ reasoned, Plaintiff's hearing testimony and a consultative examination, (*see* R. 684–91), demonstrated that Plaintiff retained "full

---

[7] Neuroforaminal stenosis is a type of spinal stenosis. Neural Foraminal Stenosis: Treatment, Symptoms, and Causes, https://www.healthline.com/health/neural-foraminal-stenosis (last visited Sept. 28, 2018). It occurs when the small openings between the vertebrae, called the neural foramina, narrow or tighten, which may compress the nerve roots that exit the spinal column through the neural foramina. *Id.* The L5-S1 level refers to the lumbosacral joint, which is located at the base of the spine, between the lowest of the lumbar spine's five vertebrae (L5), and the first vertebra of the sacrum (S1). All about L5-S1 (Lumbrosacral Joint), https://www.spine-health.com/conditions/spine-anatomy/all-about-l5-s1-lumbosacral-joint (last visited Sept. 28, 2018).

range of motion of her lower extremities and is able to ambulate independently," (R. 23), the ALJ improperly ignored other evidence indicating that Plaintiff could *not* ambulate effectively. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). As part of his February 2016 consultative examination, Dr. Elmes opined that Plaintiff could not "walk a block at a reasonable pace on rough or uneven surfaces" or perform activities like shopping. (R. 1326.) Based on examples of "ineffective ambulation" listed in Listing 1.00(B)(2)(b), Plaintiff's inability to perform these activities could indicate an inability to ambulate effectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b) ("[E]xamples of ineffective ambulation include . . . the inability to walk a block at a reasonable pace on rough or uneven surfaces [and] the inability to carry out routine ambulatory activities, such as shopping and banking[.]"); *Moss v. Astrue*, 555 F.3d 556, 562–63 (7th Cir. 2009) (finding that the ALJ failed to adequately consider whether the claimant could ambulate effectively based on the same examples from Listing 1.00(B)(2)).

The ALJ did not have to accept Dr. Elmes's opinion about Plaintiff's ability to perform these activities, but she was required to consider it; if she decided not to credit it, she had to explain why. *See Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected."). Because the ALJ failed to do so, remand is required. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (finding remand necessary because the ALJ improperly ignored lines of evidence); *Abhsie v. Colvin*,

9

No. 13 C 8886, 2015 WL 1292536, at *4 (N.D. Ill. Mar. 17, 2015) (requiring remand when the ALJ failed to confront conflicting evidence).

In addition, the Court agrees with Plaintiff that the ALJ failed to adequately address her obesity in evaluating whether Listing 1.04(C) was met. Under SSR 02-1p, the ALJ was required to specifically address whether Plaintiff's severe obesity, in combination with her other impairments, met a listing. *See McAfee v. Berryhill*, No. 16 C 2339, 2017 WL 8200182, at *5 (N.D. Ill. Dec. 15, 2017); *Muiser v. Colvin*, No. 2:14-CV-167-PRC, 2015 WL 5714047, at *7 (N.D. Ind. Sept. 28, 2015); SSR 02-1p, 2002 WL 34686281, at *3, *5 (Sept. 12, 2002). The ALJ acknowledged this obligation; however, she merely identified the ways that obesity, in general, may adversely impact co-existing impairments and then concluded that "[t]hese considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process." (R. 23.)

This explanation was inadequate. The ALJ should have specifically explained how Plaintiff's obesity, which was deemed a severe impairment, affected her lumbar spondylosis and any other impairment that related to Listing 1.04(C). *See Muiser*, 2015 WL 5714047, at *7 (finding reversible error where the ALJ offered "no analysis of why Plaintiff's obesity in combination" with the medical evidence regarding Listing 1.04 did not equal that listing). Simply stating that obesity has been accounted for does not allow this Court to review whether the ALJ's evaluation was legally sufficient. *See Briscoe*, 425 F.3d at 351 ("[T]he ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful

appellate review."); *see also McAfee*, 2017 WL 8200182, at *5 (suggesting that "the ALJ explicitly make clear in her decision how Plaintiff's obesity was taken into account" on remand). Remand is appropriate so that the ALJ can explicitly explain how Plaintiff's obesity factored into her listing analysis. *See Steele,* 290 F.3d at 940 (requiring remand where an ALJ's decision does not allow for meaningful review).

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 23] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**            **ENTERED:**

*[signature: Maria Valdez]*

**DATE:   November 28, 2018**

                                          **HON. MARIA VALDEZ**
                                          **United States Magistrate Judge**